ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

June 13, 2012

The Honorable Jane Nelson
Chair, Committee on Health and
    Human Services
Texas State Senate
Post Office Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0950

Re: Authority of the Texas Lottery Commission
to conduct second-chance drawings and other
games via the Internet (RQ-1037-GA)

Dear Senator Nelson:

You pose two questions about the authority of the Texas Lottery Commission (the "Commission").[1] First, you specifically ask whether the Commission has "authority to conduct second chance drawings[2] for losing tickets via the [I]nternet." Request Letter at 1. Second, you generally inquire about the Commission's "authority to conduct any game of chance via the [I]nternet." *Id.* Because the Commission's use of the Internet is an aspect of both of your questions, we will address it separately. We first consider the Commission's authority with respect to second-chance drawings for losing tickets and games of chance.

The Commission is an administrative agency. An administrative agency may exercise only those powers expressly conferred by the Legislature, along with those implied powers necessary to exercise its expressly granted powers. *See Pub. Util. Comm'n of Tex. v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 315 (Tex. 2001). The Legislature intends for state agencies to have powers that are reasonably necessary for an agency to fulfill its express function or duties, as long as the

---

[1]Letter from Honorable Jane Nelson, Chair, Senate Comm. on Health & Human Services, to Honorable Greg Abbott, Tex. Att'y Gen. at 1 (Jan. 19, 2012), http://www.texasattorneygeneral.gov/opin ("Request Letter").

[2]The Commission informs us that the Luck Zone second-chance drawing about which you ask is a promotional game under the Commission's rules. The Commission avers that the game is "not conducted via the Internet" but rather is offered pursuant to the Commission-approved drawing procedures referenced in the promotional rule. *See* Brief from Kimberly L. Kiplin, General Counsel, Tex. Lottery Comm'n, to Jason Boatright, Chairman, Opinion Committee at 2, 3–4 (Feb. 22, 2012) (on file with the Opinion Committee) ("Commission Brief") (stating that applicable draw procedures were approved by the Commission and describing procedures); 16 TEX. ADMIN. CODE § 401.313(a) (2012) (Tex. Lottery Comm'n, Promotional Drawings) (providing that eligibility for promotional drawing shall be determined by, but not limited to, a direct entry to a promotional drawing as provided in the applicable draw procedures); *see also* Commission Brief, Exhibit B (Texas Lottery Internet Entry Promotional Second-Chance Drawings Procedure, signed by Executive Director (Oct. 7, 2011)) (on file with the Opinion Committee). Under the drawing procedures, the Commission requires a person wishing to participate in the second-chance game to enter losing ticket information from specified scratch-off games through a portal on the Commission's website. *See* Commission Brief at 2; Commission Brief, Exhibit B, section III, Qualified Entries.

agency does not exercise what is effectively a new power or a power that contradicts the relevant statute. *See id.* at 316. "In deciding whether an administrative agency has exceeded its rulemaking powers, the determinative factor is whether the rule's provisions are 'in harmony with the general objectives of the [statute].'" *Pruett v. Harris Cnty. Bail Bond Bd.*, 249 S.W.3d 447, 452 (Tex. 2008).

Under chapters 466 and 467 of the Government Code, the Commission has broad authority over the State Lottery Act (the "Act"). *See* TEX. GOV'T CODE ANN. §§ 466.014(a), 467.101(a) (West 2004). It is expressly authorized to adopt all rules necessary to administer the lottery. *See id.* § 466.015(a) (West Supp. 2011). The Commission is also expressly authorized to "adopt rules governing the establishment and operation of the lottery, including rules governing: . . . the type of lottery games to be conducted." *Id.* § 466.015(c)(1). In addition, the Commission has authority to adopt rules governing "any other matter necessary or desirable as determined by the commission, to promote and ensure: . . . the convenience of players." *Id.* § 466.015(c)(15)(B). The Commission is further authorized to promote and advertise for the lottery. *See id.* § 466.015(c)(10) (authorizing the Commission to "adopt rules governing the establishment and operation of the lottery, including rules governing: . . . the means of advertising to be used for the lottery"); *see also id.* §§ 466.103(b) (authorizing contracts to conduct promotional events), 466.109 (prohibiting publicity of individuals in a promotion for the lottery) (West 2004). With respect to your first question regarding second-chance promotional drawings, the powers expressly granted to the Commission in chapter 466, coupled with the powers that may be implied therefrom, are sufficiently broad that a court could find that the Commission has authority to offer players a second opportunity to win a prize from a losing scratch-off ticket.

With respect to your second question regarding the Commission's authority to conduct "any game of chance," chapter 466 pertains to only the state lottery and does not purport to govern all games involving chance. *See generally id.* §§ 466.001–.453 (West 2004 & Supp. 2011) (authorizing the Commission to control and administer the state lottery). However broad the powers granted to the Commission may be, the Commission lacks the legal authority to engage in gaming activities other than those which are placed under the purview of the Commission. *See id.* §§ 466.014(a) (granting Commission authority over the lottery), 467.101(a)(1) (granting Commission authority over chapter 2001, Occupations Code, governing bingo), 467.101(a)(2) (granting Commission authority over chapter 466, Government Code, governing the lottery) (West 2004).

Because you raise the Commission's use of the Internet for its activities in both of your questions, that is where we focus our analysis. You do not raise any particular provision, but to the extent your concern is Internet gambling, two federal statutes may be implicated: the Unlawful Internet Gambling Enforcement Act ("UIGEA") and the Interstate Wire Act ("Wire Act"). *See* Unlawful Internet Gambling Enforcement Act, 31 U.S.C.A. §§ 5361–5367 (West Supp. 2011); Interstate Wire Act, 18 U.S.C.A. § 1084 (2000). The UIGEA does not itself prohibit Internet gambling. *See Rousso v. Wash.*, 204 P.3d 243, 249 (Wash. Ct. App. 2009) (recognizing that the UIGEA "does not itself criminalize transmission of gambling information"). Rather, the UIGEA prohibits gambling businesses from accepting certain financial transactions made in the pursuit of "unlawful Internet gambling." 31 U.S.C.A. § 5363 (West Supp. 2011). And though the UIGEA's

definition of "bet or wager" includes "the purchase of a chance or opportunity to win a lottery or other prize," its definition of "unlawful Internet gambling" includes only those bets or wagers that are "unlawful under any applicable Federal or State law in the State . . . . in which the bet or wager is initiated, received, or otherwise made." *Id.* § 5362(1)(B), (10)(A) (defining "bet or wager" and "unlawful Internet gambling"). In addition, the UIGEA expressly states that "[n]o provision . . . shall be construed as altering, limiting, or extending any Federal or State law . . . prohibiting, permitting, or regulating gambling within the United States." *Id.* § 5361(b). Because the lottery is legal in the state of Texas under chapter 466 of the Government Code, it is not "unlawful Internet gambling" under the UIGEA. We thus do not believe the UIGEA bars the Commission from utilizing the Internet in furtherance of its activities undertaken pursuant to chapter 466.

The Wire Act also does not impose a per se prohibition of Internet gambling. *See Rousso*, 204 P.3d at 249 (noting that the Wire Act has "never been interpreted by a court as a federal prohibition on Internet gambling"). Instead, it prohibits the knowing use by a gambling business of a "wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest." 18 U.S.C.A. § 1084(a) (West 2000). The Fifth Circuit has construed the Wire Act to apply only to gambling on sporting events or contests. *See In re MasterCard Int'l Inc.*, 313 F.3d 257, 262–63 (5th Cir. 2002)[3] (agreeing with district court's conclusion that the Wire Act "concerns gambling on sporting events or contests"). There is no indication that the activities about which you ask involve a bet or wager on a sporting event or contest. Consequently, based upon the Fifth Circuit's decision, the Wire Act does not appear to prohibit the Commission from using the Internet during the course of its administration of chapter 466, provided there are no bets or wagers on sporting events or contests.

Because neither of these federal statutes apply here, we briefly consider state law. Nothing in chapter 466 expressly prohibits the Commission's use of the Internet in its administration of the Act. *See generally* TEX. GOV'T CODE ANN. ch. 466 (West 2004 & Supp. 2011). Under chapter 47 of the Penal Code, gambling is a criminal offense. *See* TEX. PENAL CODE ANN. § 47.02(a) (West 2011). But participation in the state lottery under chapter 466 is a defense to prosecution of the offense. *See id.* §§ 47.02(c), .09(a)(2)–(3). And there is no provision in chapter 47 criminalizing behavior that is otherwise permitted—such as participating in a second-chance drawing under chapter 466—simply because the activity occurs on the Internet. *See generally id.* §§ 47.01–.10. If the Legislature wished to prohibit the Commission from offering a second-chance drawing utilizing the Internet, the Legislature could enact such a statutory prohibition. But it has not done so. Accordingly, we cannot conclude that the Commission's use of the Internet here is prohibited by the Penal Code.

In sum, we believe it is likely that the Texas Lottery Commission has authority to utilize the Internet in its promotional second-chance drawings for losing tickets.

---

[3]*See also* U.S. Dep't of Justice Memorandum Op., *Whether Proposals by Illinois and New York to Use the Internet and Out-of-State Transaction Processors to Sell Lottery Tickets to In-State Adults Violate the Wire Act*, (Sept. 20, 2011), 2011 WL 6848433 at 1, 8.

## S U M M A R Y

Pursuant to its broad authority under the State Lottery Act and absent prohibition otherwise, it is likely that the Texas Lottery Commission has authority to utilize the Internet in its promotional second-chance drawings for losing tickets.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

DANIEL T. HODGE
First Assistant Attorney General

JAMES D. BLACKLOCK
Deputy Attorney General for Legal Counsel

JASON BOATRIGHT
Chair, Opinion Committee

Charlotte M. Harper
Assistant Attorney General, Opinion Committee